Shall I begin? May it please the Court. My name is Andrew Pierce of the law firm of Pierce and Scherer, and I'm here representing the appellants Craig Cooper and Olive Industries. There are three cases, two issues on appeal. I'll try to deal with each of them in about five minutes and save five minutes for rebuttal if that works out, which it might not. The first question I want to talk about today is whether there was sufficient evidence of bad faith in this case. Bad faith under California law, which is really breach of the covenant of good faith and fair dealing in an insurance policy, does not require malice. Yeah, what was the bad faith? The bad faith was denial in October of 1999 of the claim without a reasonable basis and denial after the cause of the incident was determined by, to be the manhole, continued denial of the claim at that point in time. So two instances. Didn't Cooper himself espouse the view that the contaminated snow likely diluted the purity of the well, and he didn't abandon that until after the initial denial of coverage? The insurer's letter, he thought that the insurer's letter, which is what we're looking at to determine their reasonableness, says there were breaks and cracks and gaps in the sewer lines. That's what their denial letter said. And under their own policy, under the definition of water damage, there would be a specified cause of loss. Well, but the first point is I think Cooper himself claimed that the snow did it. Cooper's state of mind is irrelevant. And the court noted that denial of the Rule 59 motion. Cooper's state of mind is not what the inquiry is, though, Your Honor. Well, doesn't that reflect on whether there was bad faith, if your own client was confused about where this was coming from, and it was claiming that it comes from someplace it ultimately didn't come from? I mean, there was a lot there was a serious confusion as to what caused this problem. And your own client thought it was the contaminated snow for the long, long period of time. That's true. By suing the public utility district. And he sued the public utilities district, and he prevailed with a finding that it was the leak was on their property, not on his property. That was the only difference. And all the claims that he was making were for things that were not covered by the policy. And the insurance company hired more than one inspector. And then they finally hired evidence of something completely independent, none of whom came up with an answer that indicated that the cause was covered loss. Well, Your Honor, certainly by the time the report from Mr. Leary came in indicating that the leakage was from the manhole and that it was leakage, that certainly triggered the definition of water damage under the policy. So even if there was initially confusion at that point in time, the insurance company should have paid the claim. Well, they started right off by giving him $5,000 just pending the investigation. I mean, that's not exactly showing a bad faith either, is it? It's a standard practice, Your Honor. Well, if there was absolutely no coverage, I've seen a lot of no coverage matters, and I never had a check involved when I got it. It was a matter of the fault is not with our insurer or it's not covered under the policy. It's very sincerely yours. You've got a very high hurdle to cross here because we've got a trial judge who understood this case, saying if an insurer denies coverage because of a genuine dispute over coverage, the insurer does not act in bad faith. And then we're told below, in this instance, a factual dispute over the cause of the contamination was an integral part of a legal dispute between the parties over the scope of the pollution exclusion from coverage and the water damage exception to that exclusion. Both disputes were genuine. What's the problem with that? Certainly at the point of the trial when it was stipulated that the leaking manhole caused the contamination, and the policy says water damage is a specified cause of loss, and water damage is defined as breaking or cracking up any part of a system containing water or steam at that point. You're right, but the court who took a look at this said this was a genuine dispute. They had a position. It may not have been the winning position, but it wasn't a bad faith position. Well, this is a question of reasonableness. It's a question of law. I believe this court has the power to look at that issue as well, and under the language of the policy, there was no reasonable dispute at the time of trial or for a long time before trial. So you think the trial judge was just confused and wrong about that? Correct. See, we're an appellate court, and it's not a place to come and redo everything that's done down below it. Even in cases where we review things de novo, it doesn't mean we ignore a trial judge who spent a lot of time on a case. I understand that the facts of this case are complicated. The policy is involved. There's a lot of reports. Nonetheless, by the time of trial or well before trial, when it was stipulated what the cause was, at that point there was no reasonable basis for saying there was some other cause. The judge said, yes, there was, and that's why we're here in the Ninth Circuit, Your Honor. It's one thing to say in the abstract that they failed to test the manhole. That wasn't bad faith to fail to test it. It's another thing when they're saying, no, the manhole didn't cause it, despite a test that proves the manhole did cause it. At that point, it becomes bad faith. Did they have any expert testimony to back up their position? Their expert criticized the test that was performed, but he did not test the manhole himself, nor were his criticisms of any great significance. He simply said it could have been porous, it could have been porosity that caused it, but there was no evidence for that. It was an unreasonable position to take. If I could, I'm going to move on now to the other two issues since I have limited time. The testimony of Robert Johnson, it was apparently not included because the spreadsheets that he intended to rely upon were not cross-checked by him. That was the reason given at the time. He himself testified that normally he would. That's true. And he would not just rely on the information that was fed to him by his client. He would check bank records and some solid data so that he was not being, in effect, conned. He was being an honest expert, even though hired by the plaintiff. Well, that's true. And he said, I didn't do that in this case. But that information was available and could have been tested. It simply made it easier. Well, he was given a couple of extra days to do it, and then he was ill and couldn't testify. That's true. And my firm isn't using him anymore. My former firm, Cox Padmore, isn't using him anymore. I'll grant you all that nonetheless. But why is that an abuse of discretion? This is not a case like the cases of U.S. v. Kuang and the other cases that were cited where an expert comes in and says, I'm going to rely on this other expert who isn't here to testify. What he was relying on was spreadsheets that were in evidence. Mr. Cooper's own testimony said, I made these calculations based on my checks and my bank balance. Here they are. If you want to look at them, they're at ER 198 to 203. They're in the record. All he did was calculate what his sales were and what the cost of goods sold were, which is something IRS requires every layperson to do if they operate a business, to tell them cost of goods sold. And he had to calculate net of sales tax. That's all he did. There's no professional judgment involved. There's no auditing or accounting involved. It's simply a question of what were my sales in each month, what was my cost of goods sold, therefore what's my profitability. That's the data that was admitted without objection, and that Mr. By the time the expert was going to testify, those figures were in evidence. Correct. In the record. Correct. All right. Now, I know the appellee disputes that, but if you read the actual testimony given by Mr. Cooper, he says, here are my spreadsheets. They're attached. They came in evidence. These are a refined version, a refined version of what I gave Mr. Johnson. So, really, they're the same spreadsheets he had just, and there's some handwritten notes on them. What does the refined version mean? The refined version meant. Different. That's true, Your Honor. He came up with a larger figure for his growth of sales than the one that Mr. Johnson was going to testify to. So if there was any refinement, the benefit of that would have been lost to Mr. Cooper had Mr. Johnson been allowed to testify. And, again, the later version. Let me just understand the practical effect of this, is that the expert doesn't get to testify and then they say, well, you can either beef up your expert or you can testify. No, they didn't. Well, no, that's not what the judge said. That's what was asked, but that's not what was given. Well, that wasn't, it wasn't asked until later on when the expert disappeared. Right. No, the judge indicated in his, that was after Mr. Johnson had testified and been cross-examined. Not Mr. Johnson, but the plaintiff. And he was off the stand. Oh, I see. Okay. So the court didn't let, didn't say he could come back. He just said. As soon as it was apparent that Johnson was not going to. That Johnson could come back. As soon as it was apparent that Johnson was not going to be qualified, as the court says in his post-trial ruling, at this juncture, Cooper made two requests to the court, to one of which the court acceded. Cooper asked either that he be allowed to testify or that Johnson be given a chance to rehabilitate his testimony. It would have been better had Cooper been allowed to testify, because he could have testified to those documents that are already in evidence and what the implication of those were for lost profits. This is not a case of an auto, of an airplane accident, medical malpractice, something like that, where if your expert goes south on you, as seems to have happened in this case, there's no way for the court to rule. Here you have lost profits that a lay business owner, sole operator of a restaurant can and often does testify to. It's a decision we make in these cases all the time. Do I even need an expert? The result was that he didn't get any lost profits? Correct. And did you appeal that decision as opposed to the failure to permit him to testify? We appealed the failure to permit him to testify. Okay. Because, see, that seems to me that would be a different thing. In other words, if there's evidence in the record from which one you could discount his testimony or discount it, but if they award zero profits in the face of some evidence in the record, then that would be a different point of appeal, but that's not in front of us, correct? Well, in his – the spreadsheet was there, but the testimony that one would – My point is your appeal is to the failure to admit evidence as opposed to specifically the failure to award lost profits, correct? Yeah. The way the appellate brief was phrased, that would be the case. All right. However, you know, if the court believes there's evidence in the record from which damages could be inferred, we'd certainly be willing to go back and argue that to the judge. But we can't do that. We would prefer to allow the record to be reopened. Yeah. We can't do that. I mean, I think it's troublesome that he doesn't get to put on what is ordinary business testimony, which is lost profits. Okay. I find that troublesome. On the other hand, and that he ends up with zero lost profits. But that's not the issue, of course, that's appealed. And then in reading the judge's order, the judge is really pretty, you know, clear about how this all proceeded. So I'm having some, although I don't like the result, I'll tell you that. I think that this is, you know, I don't think it's necessarily fair, but the question is, is it an abuse of discretion? And I think you have to convince us that this evidentiary ruling in the face of fairly careful order by the judge on reconsideration is an abuse of discretion. Well, the question is, is there a violation? What if this testimony had come in being unduly prejudicial? What the judge, what Judge Walker said is Cooper could not, I'm reading from ER-416, Cooper could not demonstrate to the court's satisfaction that the testimony he proposed to give would in fact be proper substitute for the disqualified testimony of Johnson. And the reason for that is he wasn't an expert. But he didn't need to be an expert. That's what makes this case different from a Cooper. So you're saying that's really a legal misjudgment on the part of the judge?  There was no prejudice. In fact, the prejudice is all to Cooper because now he doesn't have an expert. But he has to live with that because his expert. Didn't he also say it would be prejudicial to the defendant? Because the defendant would have to go out and prepare for cross-examination and also get another expert in order to look at these. The defendant had an expert. Pardon me? The defense had an expert ready to go. I know, but the point is the expert had already testified, I'm sure. The Court did not find that there was going to be unfairness in allowing Cooper to testify in the manner in which you've described. I know that the appellee wants the Court to think that, that that was a motivating factor in the judge's ruling. I'm looking at the... But in response and clarifying what Judge Meskel asked, what's the timing of Mr. Johnson's proper testimony? Had the defense expert testified yet? Johnson was excluded on a Tuesday. The offer to make Mr. Cooper's testimony came on a Wednesday. The trial finished on a Friday. And I frankly don't remember what the sequence was. Okay. No, that's not my question. I'm trying to get the... Had you had the insurance company's expert testified at the point that Mr. Johnson was going to testify, or was that going to be in response to Mr. Johnson? In response to Mr. Johnson. So does that mean that the expert didn't have to testify because there was nothing to rebut the insurance company expert? I have to say I was not at the trial, and I don't recall the details on that. Okay. Cooper's testimony was submitted in narrative form, and he didn't include anything in it about lost profits, did he? That's because they were expecting Johnson would cover that. Yeah. So then he comes in later on at the end of the trial when Johnson crashed out and said, now can I have a chance? I would say middle of the trial, Your Honor. And the judge exercised his discretion and said, no, that's a problem. You had your opportunity, and the other side will have to come in. Yeah. I mean, this is a policy issue. Should litigants be punished when experts not under their control, not their employee, not even an attorney-client privilege relationship with them, crashes and burns for whatever reason, too busy, didn't... I don't know why this happened. I defended Mr. Johnson. Maybe he looked at the records and said, I'm out of here. I mean, we don't know. I'm not going to understand with that. I mean, we don't know that either, one way or another. I mean, there's a lot of possibilities. The guy got drunk. He evaporated. That's all we know. Or he looked at the records and said, I'm not going to testify on the basis of these things. The question then is, why shouldn't, in the interest of justice, Mr. Cooper, the owner of the business who bought business interruption insurance, be allowed to testify to lost profits like any other business owner in this scenario? The court certainly had the discretion to permit that. The question is, was it an abuse of that discretion to deny it under these circumstances? Exactly, Your Honor. And that's what we're submitting to the court. I'll reserve the rest of my time. Okay. Thank you, counsel. May it please the Court. My name is Sam Ruby. I'm representing Travelers. I tried this case. I can answer your questions about what happened. I've marked up the excerpts of records so hopefully I can find things, and I want to answer some of the allegations that have been made here today. Let me start with Mr. Johnson and his exclusion. There was a comment from the bench earlier, the phrase, trust but verify. That's exactly the problem we had in this case. Mr. Johnson trusted Mr. Cooper's information, but he did not verify it. It's been suggested here today that the information upon which Mr. Johnson relied was in evidence. That is not true. There was some information presented by Mr. Cooper as part of his direct testimony that did play a part in Mr. Johnson's conclusions, but there was an entirely different set of spreadsheets, basically monthly calculations of expenses categorized in certain fashions, monthly calculations of revenue that were the foundation for Mr. Johnson's opinion. Those documents were not introduced with Mr. Cooper's direct testimony, and the record that counsel cites to bears that out. He refers you to ER 198, et cetera, which is Mr. Cooper's direct statement, and there are some spreadsheets that follow. If you look at those, though, you will see there are some spreadsheets from the historical performance of the tavern under a prior owner. There's a comparison of some revenue on certain days, and that's it. Everything else that I questioned Mr. Johnson about in my voir dire was not a part of this exhibit. Now, we don't know for sure why Mr. Cooper did not offer that evidence as part of his testimony. He was given carte blanche by the Court to say whatever he wanted to say in his direct testimony, and as the principal witness, he had a lot of time to think about what he was going to do in this case. For some reason, a tactical decision was made to allocate the proof between Mr. Cooper and Mr. Johnson. That decision turned out to be a poor one, but that fact alone does not warrant reversing the trial court's decision. The comment that, you know, this all just went to the weight of the evidence and the judge should have let it in, well, of course the Court has a gatekeeping function under Rule 702 and Rule 703. There has to be a reliable foundation for the evidence. The Court here found that there was no foundation, and on that basis properly excluded the testimony. Well, gave Mr. Johnson what? I'm sorry? What did he do? You can – Mr. Johnson can check this out and come back. Well, in addition to ruling properly on Tuesday, on Wednesday, the plaintiff comes back and says, Your Honor, we've had this set back. We've thought about it. What we'd like to do is have another chance. We'd like to have Mr. Johnson afforded some time to do the verification that he should have done. That was an admission from counsel. And much to my consternation, here on Wednesday halfway through the trial, the judge grants that relief. And now I'm looking at having to redepose Mr. Johnson in the middle of the trial after he does some new work. I've got an expert who has already prepared, just as all the other witnesses did, a written statement of what her financial analysis was going to be. That is now potentially out the window based on what Johnson's going to come up with in the next couple of days. So you objected to that? I objected to that. And the Court gave him that latitude. The Court gave him that latitude. Now, what happened to Mr. Johnson? Well, Mr. Johnson, at the order of the Court, he was due to ---- Excuse me. When he asked for the additional time, did he do it in the alternative at that time, or did he merely make the request for the rest of the time? I just went back and looked at that, Your Honor, just to refresh my recollection. And my recollection was correct. At ER 510, in the appellee's supplemental excerpts of record, I included the entire transcript of the initial proceedings on that Wednesday morning when these requests were made. And what Mr. Childs, who was the trial counsel for Mr. Cooper, came in and said is he had two alternatives. He wanted to ---- Now, are you paraphrasing or reading? I'm going to read it to you right now from ER 10. It seems to me we are left with two alternatives, both of which I've tried to explore. One is to have Mr. Johnson go and do the work that he should have done before he tried to testify yesterday, and he says he will be able to do that tomorrow. The second thing that we did was we had Mr. Cooper sit down yesterday afternoon and work through the night, putting together his damages that he as the owner of the business can testify to. He's done that. He's prepared to testify to that. But then counsel said this. Two problems with that exist. One is we have not presented this testimony to the defense before. We have not submitted it as part of the pre-submissions. And the second factor is that he, Cooper, really hasn't had a chance to check or test it, and I am somewhat concerned about his fatigue levels. So clearly the preferred alternative of counsel was to have Mr. Johnson given some time to rehabilitate. He was not looking at Mr. Cooper recalled at this point. And the court said, okay, go for Johnson. And that's what we did. And then what happened to Mr. Johnson? Do we know that from the record? Well, I was there. I deposed Mr. Johnson the Thursday night. So he then did do it? No. No. He came back. We took his deposition. We couldn't understand what he had done or not done. The deposition was not concluded. I didn't know what was going to happen Friday morning. What do you mean the deposition was not concluded? Did he get up and run out of the room? I mean, what happened? I believe it got so late that there was ‑‑ I mean, this was happening probably 9 or 10 o'clock at night, that someone in the room expressed, said, I don't think we can profitably continue this. Is this in the record? All of this I explained to Judge Walker that Friday morning. Right. So then the next morning you come back. We come back. Johnson's not here. Ready for Mr. Johnson, but he's nowhere to be seen. He's nowhere to be found. Now Cooper's counsel gives some speculation as to what might have happened. I set the record straight because I had been there. I tell the judge there's no question about what happened. And then a very interesting thing happens. Instead of asking for more time because Mr. Johnson's sick or he just didn't get to it or something, they say we think it would be best for us not to proceed with Mr. Johnson. And they ask now to bifurcate the trial and have leave to call, retain a new expert. So they abandoned Mr. Johnson at this point, clearly unimpressed with whatever he was going to be able to put together. And at the end of all this. That was denied. That was denied. And I, if anything, really I think could have been a proper issue for appeal here, that should be it. I mean, once you abandon your expert, you don't ask for more time. I don't know how you come back and say, well, you know, but he shouldn't have been excluded in the first place, especially when you've admitted in between that he wasn't prepared. This allows me to segue into the question of Mr. Cooper retaking the stand. There's some lack of clarity here as to what he was trying to do at the end of the case. Was he trying to reopen his case? Was he simply trying to recall himself to the stand? Either way, it doesn't matter. Under Rule 611, the judge has discretion to control the order and the mode of proof. Whether you're reopening your case or simply asking to recall a witness because your case is technically still open, the judge has discretion whether or not to allow that. Now, Mr. Cooper, again, had free reign when he took the stand at the very beginning of the trial to say anything he wanted to say about his damages. He commented on some things. He chose not to comment on other things. And there was no abuse of discretion in the trial court saying at the end of this trial, now that that decision didn't work out for you, I'm going to give you another chance to start over. We just had a mock trial. You had a false start. Let's start the trial in earnest again today, Friday afternoon. That's not an abuse of discretion. Furthermore, under Rule 403, plaintiff doesn't get it. They harp on the fact that there are cases in which business owners are allowed to testify to lost profits. Those cases are Rule 701 cases where the question is, is this lay witness testimony or not? Is it admissible? When Cooper was denied then the opportunity to take the stand and present more testimony, was there an offer of proof made as to what he would have testified to had he been allowed to do this? Nothing I would consider an offer of proof, Your Honor. Well, nothing you would consider to be an offer of proof. Well. I'd be shocked if you would say, yeah, well, I agree. But what did he do? Was there an offer of proof that he considered to be an offer of proof? I'll say no, Your Honor. We've given you, I've given you the transcript of this colloquy at the end of the trial in my excerpts. And it was at the end of the fourth day. And there was no statement, you know, I offer, if allowed to testify, Mr. Cooper will say X and Y. It was simply a request to let him testify. And the court said, I'm not going to grant that request. And that was it. There was no offer of proof at that point as to what would have been proven. Yeah. Here's the only question I really have. This really goes to the one legal question buried in here. When the judge in his, what is this, his order following trial, says that Cooper couldn't demonstrate to the court's satisfaction that the testimony he proposed to give would be a proper substitute for the disqualified testimony of Johnson. As Cooper concedes, he is not an economic expert. So the court concluded, on balance, the probative value of the additional testimony was outweighed by concerns of fairness. The concern I had is that you don't need to be an expert to talk about your own lost profits. So I'm wondering if Judge Walker is really operating under a legal misapprehension. No. The reason is this. Under Rule 403, evidence that is otherwise admissible may yet be excluded if its probative value is substantially outweighed by one of the factors. Prejudice on fairness. So let's assume that the testimony Mr. Cooper wanted to offer would have been admissible as relevant under Rule 401, admissible under Rule 700 series as lay opinion testimony, all that. This Court still had the discretion to exclude that otherwise admissible evidence if its probative value was substantially outweighed by one of the risk factors. And that's the call the judge made. First, in looking at the probative value, he agreed with the arguments that we presented to him that Mr. Cooper was not going to be able to give very reliable information about profits. We conceded he could take the stand and say, this was my revenue, these were my expenses. But that's just the data that an accountant takes, and applying the formula provided in the policy comes up with what is called the loss of business income. You need to be an accountant to do that right. It's arithmetic. You don't need to be anything other than to apply the numbers, right? I mean, it's nothing more than arithmetic calculation. Not exactly. There's how you account for expenses, whether you treat them as one. Right. But he could testify to that as a business owner, couldn't he? But I admit he could testify. I would not be able to knock him out with a 701 objection. But whether that testimony was going to be very probative, was it going to be entitled to much weight, given what this court heard? Isn't the real reason that the judge in the end decided this would send a huge hiccup into the trial and you would have to recall him and he hadn't been deposed on this and it would basically just be unfair to the defense? Wasn't that the bottom line? That's the second half of the Rule 403 analysis, is once you decide what the probative value of the evidence is likely to be, you weigh it against prejudice. And what the court found is, here's travelers. We've got an expert with a written report who's just going to take the stand and offer it. We've been through this case for a long time now based on the evidence that was presented, and now Mr. Cooper is purporting to take the stand at the end, say things we've never heard, and on the spot, we're supposed to be able to effectively cross-examine him, go out in the hall, talk to our expert witness who's waiting to testify and say, here's what Cooper said. Can you redo your calculations? And all of this is in the shadow of what counsel previous said about the value of Cooper's testimony when he made the choice to go after Johnson for the second time rather than put Cooper on. Yeah, absolutely. I think the trial court's decision not to allow Mr. Cooper to retake the stand could be sustained independently as a 611 determination of controlling the order and mode of proof, or it could be sustained independently as a rule 403 determination that the prejudice outweighed the minimal probative value that Cooper was going to be able to offer. There's a few minutes left. Anything else, counsel? Sorry? Do you have anything else? I wanted to make just a couple of points on the bad faith claim, although I don't intend to belabor the issue. You're not presented simply with an issue of law. The question of whether an investigation is reasonable is a question of fact. Questions of fact determined by the trial court are entitled to deference. They're reviewed for clear error. There were both legal and factual issues in this case, and as the court has observed, the trial court found those both to be reasonable. So even if you only agree with one of those, all it takes is one reasonable basis to defeat a bad faith claim. The comments that were made about travelers' experts, travelers did have an expert. His name was Michael Bonkowski. He did offer some testimony on these questions about whether the manhole was cracked, how it got cracked. You'll find that in the records starting at ER 609. Obviously, they disagreed, and frankly, the judge sided with them at the end of the day, but that doesn't mean it was a bad faith position. And with respect to the stipulation that we entered into, of course, this was after Cooper tried his case against the PUD to a certain conclusion, and as a gesture of good faith, instead of contesting the determination that was made in that case, as we might have done because we were not collaterally a stop, we said to Cooper, all right, you proved your point. We'll accept that as the fact from here on out, but we still have some coverage issues. So even after the stipulation was reached, there were still issues in play, and those are the issues that the court found to be genuinely disputed. Thank you. Thank you, counsel. The request to have Mr. Cooper testify came at 9.09 a.m. on day three of the trial, the Wednesday. The thing Mr. Child said at that time at ER 510 is, we had Mr. Cooper sit down yesterday afternoon and work through the night putting together his damages that he, as the owner of the business, can testify to. He has done that. He is prepared to testify to that. That's Wednesday morning, 9 a.m., and the trial ended on Friday. It was still Cooper's case. In fact, a little later on in the transcript, ER 517C, Ms. Milligan, the other defense counsel indicates, she doesn't even have any witnesses arranged for that day. So it's still the plaintiff's case. He was excluded from that point. If Johnson had done his job, perhaps this wouldn't have been an issue, but certainly the plaintiff, in light of the exclusion of his expert on the second day of trial, it's not unreasonable for him to come in and say, well, now, okay, I have these spreadsheets, they're already in evidence, I'm going to now testify to their implications for damages, which I wasn't planning on doing previously. Where is the prejudice in this? The prejudice is to Mr. Cooper. This is a case about business interruption insurance. This is what the case is about. What was his losses during the many months his business was closed because of a specified loss under the policy? He's completely prevented from presenting that. Realistically, there aren't other witnesses out there who can testify about this, lay witnesses other than Mr. Cooper. This is an abuse of discretion to exclude the evidence at this stage. Had he ever been deposed by the defendant on the issue of lost profits? He had not been specifically deposed on the issue of lost profits, no. So all of a sudden he pops up with a whole new bunch of information. No, it's not new information. He was deposed. I thought you said he stayed up all night and prepared all this material. Calculations, Your Honor, but not base material. The base material was all available at that position, all available. Were those calculations made on offer of proof? Were those calculations made? No. Well, I just read what I would consider the offer of proof. Now, the defense or the judge asked for any further elaboration. But his spreadsheets, as I indicated earlier, were an evidence, without objection, that showed monthly revenues and monthly expenses. Now you've got a refined version, you said earlier. That's the part that was in evidence, was already in evidence. It shows monthly expenses and monthly revenues for the business. So it's not a big we're not getting into uncharted territory here. We're not using source material that was unavailable. Bank statements and checks were what he was going to rely on. Those bank statements and checks were made available in discovery, and he was deposed on those. So all we're doing is we're making the final step to a rather mechanical calculation of profits. That's why you don't need an expert to do it. This is what the case is about. It's a lost profits case. So we would submit there was an abuse of discretion at this stage in not permitting this on the beginning of day three of the trial. Yes. I guess the practice pointer here is it would have been nice if somebody would have said, well, I'd like to make an offer of proof as to exactly what my client would have testified had you allowed him. And here's the underlying document. So then we could see that. Well, I think if you're dealing with a witness who a couple days before the lawyer had said, we don't really want to put him on the stand. Well, I've read. It sounds like everybody out for a long one. Mr. Charles was faced with a difficult situation. I believe he did make a clear offer to have Mr. Cooper testify to damages not once but twice at a stage where it would not have been prejudicial to anyone, Your Honor. Thank you, counsel. The case is already submitted. Go ahead. Sure. OK. Microbiometrics versus P.S.S. Thank you.
judges: Meskill, Trott, McKeown